The document below is hereby signed.

Signed: June 6, 2017



*S. Martin Teel, Jr.*
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | Case No. 09-00783 |
| ANITA HEATHER KERNACS, | ) | (Chapter 7) |
| | ) | |
| Debtor. | ) | **Not for publication in** |
| | ) | **West's Bankruptcy Reporter.** |

MEMORANDUM DECISION RE MOTION TO REOPEN

On April 21, 2017, the debtor filed three documents:

her *Motion to Re-Open Bankrutcy [sic] and Waiver of Fee* (Dkt. No. 95) ("*Motion to Reopen*");

her *Motion for Finding of Contempt and Imposition of Sanctions for Violation of the Discharge Injunction in Seeking to Collect on Predescharged [sic] Debt* (Dkt. No. 96) ("*Motion for Contempt*"); and

her *Declaration* (Dkt. No. 97) in support of her *Motion for Contempt*.

Because the *Motion to Reopen* concerns an alleged violation of the discharge injunction, no fee is owed for filing the *Motion to Reopen*, and the request for a waiver is unnecessary. By the *Motion to Reopen*, the debtor seeks to have the court reopen the case in order to pursue her *Motion for Contempt*, which seeks to

hold in contempt three entities ("the respondents").[1]  Because the *Motion for Contempt* fails to state a proper basis for finding civil contempt, the court will deny the *Motion to Reopen*.

The *Motion for Contempt* rests principally on the respondents' filing of a complaint for judicial foreclosure relating to the debtor's real property located at 4101 Albemarle Street, NW, #317, Washington, D.C.  The *Motion for Contempt* points to alleged violations of the automatic stay of 11 U.S.C. § 362(a) and the discharge injunction of 11 U.S.C. § 524(a)(2).

I

The allegations plainly fail to state a violation of the automatic stay.  Under 11 U.S.C. §§ 362(c)(1) and 554(c), the automatic stay of § 362(a) terminated with respect to acts against this property, as property of the estate, upon the closing of the case on March 12, 2010.  The automatic stay with respect to acts other than acts against property of the estate terminated upon entry of the debtor's discharge on February 23, 2010.  Accordingly, because the acts at issue occurred after March 12, 2010, it is only the discharge injunction that can serve as a basis for a contempt violation.

II

A discharge "extinguishes only 'the personal liability of

---

[1] The entities are Ocwen Loan Servicing, LLC; Deutsche Bank Trust Co.; and Morgan Stanley ABS Capital 1 Inc. Trust 2007-NC2 Mortgage Pass-Through Certificates, Series 2007-NC2.

the debtor' . . . [while] a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). The debtor points to various things as evidencing that the discharge injunction was violated, none of which support a finding of contempt.

A.

That the civil action was against not only the property but also against the debtor as the owner of the property does not alter the fact that the action was one to enforce the lien.

B.

The complaint's statement that "[t]his is an attempt to collect a debt and any information obtained may be used for that purpose" does not mean that the complaint was something other than an attempt to collect the debt via judicial foreclosure.

C.

The invocation of "personal jurisdiction" over the debtor in order to obtain judicial foreclosure did not mean that the debt was being enforced as a personal obligation.

D.

The debtor does not dispute that the action was brought to enforce a promissory note and a deed of trust that were in existence when the bankruptcy case was filed. The debtor views a post-discharge assignment and an appointment of a substitute trustee, and the recording of those documents, as constituting

3

acts in violation of the discharge injunction, but such acts do not amount to violations of the discharge injunction: they do not constitute acts to collect the debt as a personal obligation of the debtor.

E.

The debtor also asserts that the respondents lacked standing under nonbankruptcy law to enforce the debt via foreclosure, questioning, for example, whether the assignments of the note and deed of trust were properly executed. However, the debtor was free in the civil action to raise that defense, and the action, regardless, remained an action to enforce a deed of trust, not an action to collect the debt as a personal obligation.

F.

The debtor also alleges that:

> Debtor maintains and has obtained 159 pages from Ocwen's records of monthly Door Knocks ordered by Ocwen and continued 2010-2015. Ocwen sent their representatives to Debtor's home and attempted two (2) physical break ins once when Debtor was getting out of the shower a man was at Debtors bedroom window and was pulling out the screen as debtor was getting out of the shower. Debtor ran over and slammed the window and the police was called. Debtor has been unaware that Ocwen has had sent men to Debtors home and to talk to neighbours and check on debtors utilities and look inside if occupied.

*Motion for Contempt* at 10, ¶ 46. The debtor's *Declaration* elaborates:

> 11. . . . For the past several years Debtor has been severely afraid as there were 2 daytime attempted break-ins during the afternoon witnessed by neighbours in the courtyard at my bedroom window. I was getting out of

4

> the shower and there was a man at my bedroom window
> trying to break out the screen. I screamed and ran over
> and slammed the window on him. The MPD was contacted
> interviewed neighbours who witnessed the man. A week or
> so later I was having lunch with a friend and we saw a
> man jump over the courtyard edge in the bushes and went
> to my bedroom window. My friend, a retired military
> Commander was about to go confront the man but I told him
> it is probably the detective from the MPD. So we called
> him and it was not him but another attempted break in.
> I had a third attempt right after dark a man started
> cutting my screen in the living room window - I screamed
> I am calling the police and I will shoot. He ran. . . .
>      12. Neighbours and front desk Concierge started
> noticing the same men standing outside across the street
> taking pictures, they have talked to neighbours and the
> front desk asking if I lived alone, did I have a
> boyfriend, does my son visit, how often.
>           *    *    *
>      14. It has only been of recent that I had the
> physical strength to read through the 159 pages [of
> Ocwen's ledger regarding the mortgage debt] and <u>Ocwen and
> Deutsche had ordered regular door knocks, they even noted
> entering the unit, peeping in the windows to get visual
> contact, talk to my neighbors, checked to see if my power
> and electric and were on</u>. They also put Skip Tracer
> Calls out on my phones, Safeguard surveillance, and they
> were in full knowledge I was here as I answered the debt
> collection letter, I answered the complaint, the
> certified mailings they sent out were accepted by front
> desk, and the Skip Tracer Calls verified my number to my
> unit and my voicemail. . . . The Property manager caught
> one of the men who became extremely hostile and said he
> worked for Deutsche Bank.

(Underscoring in original.) If these allegations against the respondents are true, some of these acts may amount to a tort under state law. This court, however, lacks subject matter jurisdiction under 28 U.S.C. § 1334(b) to try a tort claim, arising from postpetition acts, a claim that has no impact on the administration of a case that was closed years ago. Moreover, a secured creditor's efforts to inspect the condition of its

5

collateral, even if conducted in an improper manner, do not, without more, amount to an act to collect the debt as a personal obligation of the debtor.[2] Civil contempt requires a showing of a violation of an injunction by clear and convincing evidence. These allegations, even if true, fail to meet that standard.[3]

### III

The court has discretion not to reopen a case to consider a debtor's motion for contempt when the allegations of that motion fail to establish a violation of the discharge injunction. *Pennington-Thurman v. Bank of Am. N.A. (In re Pennington-Thurman)*, 499 B.R. 329, 332 (B.A.P. 8th Cir. 2013); *In re Gill*, 529 B.R. 31, 36-37 (Bankr. W.D.N.Y. 2015). An order

---

[2] The Ocwen ledger includes these entries:

```
6.4.13 Door Knocks_ ENTERED - try bed window MPD called
7.13.13 Door Knock Entered to Close the open WF
1.27.14 Door Knock Received ENTERED to close WF
```

*Motion for Contempt*, Exhibit 2. Whatever these entries may mean, they hardly establish an act to collect the debt as a personal obligation of the debtor.

[3] Even if the allegations sufficed to state a violation of the discharge injunction, they are included as but one paragraph (¶ 46) of an 11-page motion. The court would be well within its discretion to require the debtor to file a revised motion to reopen with a contempt motion limited to such allegations. This is especially true because the debtor has raised at great lengths in the instant *Motion for Contempt* arguments regarding alleged violations of the discharge injunction by questioning the right of Ocwen to pursue foreclosure, arguments that this court previously rejected when the debtor previously sought to hold Ocwen in contempt. *See Memorandum Decision re Motion of Debtor to Reconsider Order Denying Debtor's Contempt Motion (*Dkt. No. 87).

follows denying the motion to reopen.

[Signed and dated above.]

Copies to: Debtor; e-recipients of orders.